Good afternoon. May it please the Court, my name is Meredith Barron from the Office of the State Appellate Defender, here on behalf of Christopher Bright. We raised four issues in our briefs, but I would like to withdraw Issue No. 2 and focus today on Issue No. 1, in which we argued that at the time that Mr. Bright was arrested and charged with committing his third violation of the DUI statute, the Controlling Public Act was 94-609, which made the offense charged a Class 3 felony and not the Class 2 felony to which he was ultimately sentenced. More specifically, on May 17, 2007, Mr. Bright was charged with committing a violation of the DUI statute, specifically Sections 11-501A2 and C-12. Back in 2005, the General Assembly passed six different public acts, all of which purported to amend the DUI statute, and all of which were slated to take effect on the exact same date of January 1, 2006. At the heart of this case is confusion as to which public act was actually in effect at the time of Mr. Bright's offense. Now, the state alleges that it's Public Act 94-116, which did in fact amend the DUI statute to make a third violation a Class 2 felony. But 116 never took effect because it was superseded by 609, which was passed four days later and which did not incorporate any of the changes made by 116. Instead, 609 omitted the amendments made by 116 and returned the class of offense to a Class 3 felony. So as a result, 116 and 609 irreconcilably conflicted. And since they irreconcilably conflicted, since 609 was the last amendment passed by the legislature, that was the act that should have controlled. And moreover, since the rule of lenity requires that any ambiguity be resolved in a manner that favors the accused, we ask this court to find that 609 was the controlling version of the DUI statute at the time of Mr. Bright's offense and re-sentence him accordingly. Now, we acknowledge that in support of its position, the state relies on people v. Crowdy, which did in fact hold that 116 and 609 do not irreconcilably conflict and that 609 did not repeal 116. However, Crowdy was incorrectly reasoned and should not be followed by this court. First, the Crowdy Court erred when it looked past the amendatory language at issue and instead relied on conjecture in order to reach its conclusion that 609 did not implicitly repeal 116. In fact, the Crowdy Court explicitly stated that, quote, we believe that had the legislature consciously intended to repeal what it had passed four days earlier, it probably would have done so explicitly. And further, that, quote, such an inference is more plausible than positing that the legislature had a subtle change of heart but chose to express it by passive indirection. So put another way, the court presumed the legislature had been negligent and that it had simply overlooked 116. But courts must not ignore statutory language in favor of mere speculation as to the legislature's intent. Nor can the court, by judicial construction, legislate into existence an omitted provision, which is precisely what the Crowdy Court did when it gave effect to the language of 116 that had been omitted by subsequent public acts 329 and 609. Second, another error in Crowdy was that in order to support its conclusion that 116 and 609 made separate and distinct changes to the DUI statute and that they could both be given effect without any kind of inconsistency, the court relied on Dickey v. Southern Railway and attempted to distinguish Hines v. Baltimore. But despite the court's conclusion to the contrary, the challenged amendments in Hines v. Baltimore are in fact analogous to those at issue in 116 and 609. In Hines, the Illinois Supreme Court was faced with three successive amendments to a statute limiting tax levies, and each of which added a tax exception for a different public interest fund. The Hines Court concluded that those three amendments could not be reconciled were the second and third amendment deleted by omission the particular fund that had been named in the preceding amendment. So the Hines Court concluded that the last act passed by the legislature was the one that controlled. Now here we have 116 and 609, both of which deal with punishments and sentencing for violations of the DUI statute. With 116 changing the various class of offenses for violations, and then 609 omitting those changes that had been made by 116 and adding a new provision that stated that a DUI that caused a fatality could be given probation under extraordinary circumstances, but otherwise would result in imprisonment. So like Hines, in which the court held that all of the amendments had a similar purpose of adding a tax exception to that statute, here similarly 116 and 609 have a similar purpose of amending the sentencing for violations of the DUI statute. And if we were to give both 116 and 609 effect, we would have the bizarre result of having different classes of felonies assigned to the very same violations of the DUI statute. And as a result, these two amendments are irreconcilably conflicting. And under the statute on statutes, when you have such an irreconcilable conflict, the last mandatory act passed by the legislature should be the one that is given effect. So probably it should have followed Hines and the common law and the statute on statutes and held that 609 as the one that was the last act passed should be the controlling act. Now finally, to the extent that any ambiguity remains, the rule of lenity should have been applied, under which any ambiguity should be resolved in a manner that favors the accused. Here the ambiguity is evident, as there were six different mandatory acts passed, which made a variety of conflicting changes to the DUI statute, and yet somehow were all set to take effect on the very same day. In fact, even the legislature seemed confused about what it was that had happened with these six different acts, when in 2006 and 2007 mandatory acts, it just went ahead and listed all prior versions of 11-501 instead of settling on one version. And finally, this ambiguity is further seen by looking at Public Act 94-329, which was passed after 116 but before 609, and which affirmatively added language onto a portion of the DUI statute that had been deleted by 116. So at the very least, this shows ambiguity as to which version of the statute was in effect. But rather than applying the rule of lenity in favor of the defendant, the Prouty Court just found that an ambiguous situation should be resolved in favor of the state. But where there is no clarity, the Prouty Court should have resolved this issue in favor of people like Mr. Bright and other similarly situated defendants. And indeed, by ignoring the rule of lenity, the Prouty Court created this bizarre scenario, this likely but unjust scenario, in which other defendants charged under the DUI statute at the exact same time as Mr. Bright, and under the exact same subsection as Mr. Bright, could nevertheless have been charged with a lower class of felony than Mr. Bright, simply by virtue of having been before a trial court or state's attorney who relied upon the last mandatory act passed, or who looked in the printed version of the West 2007 statute book and saw the language of C-12 as it existed in 609 and not as it existed in 116. That's the question that I have. If the statute book sets out the law and says under the law it's a class 3 felony, doesn't that speak to what the legislature intended? Well, and that's what I believe. If you look at the printed version of the West 2007 statute book, the version in that book has C-2 as it existed in 609, where it is a class 3 felony, and actually returns language that had been deleted by 116, and it actually not only makes the third violation a class 3 felony, but the statute book actually has that it's the third violation of the DUI statute at a time that your license was suspended or revoked that is a class 3 felony. So the book, as printed, returns all of that language, and it does not rely upon the language of 116. What is the status? Now, we know that you have to cite two of the laws in the official reports, but what is the equivalent in regard to statutes? I'm sorry, could you repeat that? Yeah, I mean, you have to cite the official reports. That is for case law, correct? Correct. What is the equivalent in statutes, in regard to statutes? What do you look to as the statement of the law in Illinois? Well, for the statute of time, in effect of the time? Yes. Well, the statute of time, I would believe that you would look to the actual printed statute book, and I think the confusion here... Which printed statute? Well, the problem is, to the Illinois reporter itself, that's not printed every year, and there are so many different amendments made to this at the time. I think that's part of the problem that we have, is that... Yeah, those are secondary sources, aren't they? It is. This West version is a secondary source. Right. But because of the fact that these amendments were passed in such successive speed and that they continue to make these amendments, that is the version that we have. There was not, that I've seen, there was not a printed... Or is it the laws of the General Assembly? Well, I think that... That is the original source of, and the authoritative statement of the law. Well, here, I mean, the law of the General Assembly was, in fact, the last act passed. I mean, so I think that's the issue that we have. Okay. I'm just talking about the source in response to... Right, no, I understand. This is a case question, which is a concern. It is. I mean, we had this whole slew of public acts in 2005. In 2007, the statute book says it's class 3 felony. Right. You know, there's questions. I don't know how relevant they are. I'm not the local expert on the statute on statutes, but it seems to me that you've got questions of notice, questions of, I mean, people just knowing what the law is and that that ought to count for something. Well, exactly, and that's the real problem I think you have with Prouty, which is that it has this bizarre result that you end up having all these defendants who could not possibly know what it was that they were specifically being charged with. It was kind of left up to the whim of whichever particular court they were at, whichever particular attorney they had before them, which is why the last act passed should be deemed the controlling one, and correctly that the General Assembly, and that should be what you look to. And I think where it got confusing, again, going towards why the rule of lenity should have been applied, where it gets confusing is that there are so many different versions out there, it's very hard to say which was looked at at a different time, and you do have a problem with notice, and that there were defendants who should have been able to look at the statute or the last act of the General Assembly and say that if they were charged, the C-12, like Mr. Bright was, that this was the elements of the offense, this was the felony for that offense, and instead you have someone like Mr. Bright who cannot look at that act and say, oh, this is what they went forward with because it doesn't match up with his charge. And so that is a real problem, and that's why Prouty was incorrectly reasoned, and that's why Prouty and its progeny should not be followed by this court. Instead, to resolve that notice problem, to resolve the problem of the confusion that would have been faced by the defendants at that time, you have to look towards the last act passed, which here would be 609. And as there's clearly ambiguity in this case, I think that you would also need to apply the rule of lenity, which similarly would be in favor of Mr. Bright. Thank you. Just one more question. Sure. You said at the beginning of your argument that you were withdrawing your second argument. Yes. That would be the ineffective assistance of counsel? Correct. All of it? Yes. Not that you're not retaining the factual basis part of it either? We are not retaining the argument as it relates to ineffective assistance. As far as the factual basis of the alleged indictment, we maintain that the facts alleged was just a third violation of the DUI statute, but as the actual legal argument pertains, we are not retaining that. So we're withdrawing the entire legal argument, but we do retain the idea that he was actually charged with his third violation of the DUI statute, and that actually leads into something that, although I wasn't the attorney who drafted these briefs in preparing for this argument, I did notice that if 609 is in fact deemed to be the controlling act, that actually Mr. Bright should have been charged with a Class 4 felony because under 609 the analogous subsection dealing with a third violation of the DUI statute was codified under a different subsection as a Class 4 felony. So if 609 applies, then actually that is the offense that he should have been charged with because really in 116, 116 deleted the language about a suspended or revoked license, but if 609 applies, then that C-12 with which he was charged has the additional element of while his license was suspended or revoked, which was never a part of his indictment. So if this Court does agree that 609 was the controlling public act, then it follows that the only way in which Mr. Bright could have been sentenced as a Class 2 felony would be if at the time of his resentencing in 2012, the trial court erroneously sentenced him under the statute in effect at the time of his resentencing and not at the time of his offense. Because in June 1, 2008, the legislature had reorganized this DUI statute and finally did re-amend everything so that it was a Class 2 felony. However, that did not go into effect until June 1, 2008, which was well over a year after Mr. Bright's alleged offense. And so to apply that change to Mr. Bright would be a violation of the ex post facto clause as applied to him. And thus Mr. Bright should have been given the choice to elect whether he would have preferred to be sentenced under the statute as it existed at the time of sentencing or under the version, which we believe to be 609, as it existed at the time of his offense. Which he would be unlikely to elect, the latter. He would very likely elect 609. It would be a very likely election. So we therefore ask this court to find that 609 was the controlling public act at the time of Mr. Bright's alleged offense and that he be allowed to elect resentencing under that statute. Mr. Bright has already served his entirety in prison, but he does have one year and nine months remaining on his MSR. So if this court does choose to either lower his offense to a Class 3 or to the Class 4, as I discussed earlier, we would also ask that he then have his MSR lowered to the according one year from two years MSR. Thank you very much.  Mr. Arado? May I please the court? Good afternoon, Your Honor, counsel. First, I would point out that the Class 4 argument was not raised in the brief, therefore it should not wait. They were asking for a Class 3 sentencing in their brief, and therefore they can't raise that oral argument. To Justice Holder's point, public acts are the law, not the statute book. So it's a matter of convenience for people to have the statute book to be able to look up what the law says, but if there's any conflict between what the public act says and what the statute book says, the public act controls. How do regular people define that? Sorry, what? How do regular people define that? That is... In 2006, when all this was happening. Oh, sure. Ignorance of the law is no excuse, so the mere fact that an individual doesn't know what the legislature has passed doesn't excuse the fact that the public act is what's controlling. You could argue they didn't even know what they were changing or not changing. Well, I believe Prouty has really addressed that, this whole point, and I think trying to rehash this, you know, this Court has already relied upon Prouty and Gonzalez, which had a different section of the statute in which it was relying on the change, but the reasoning was completely adopted by this Court, as was the Courts in Newton and Maldonado, and so it suggests that there is no basis and that Prouty was wrongly decided when all these other courts are also, including this Court, has relied upon Prouty seems disingenuous. The... You're talking about Gonzalez. Gonzalez, in our Court, yes, Gonzalez. The... I believe that Section 94-116, which is the first one passed, is the only one that addressed changing the class from Class 3 to Class 2, and all the other sections, public acts that were subsequently passed, did not address that point. So to suggest that it simply, last in time, ignores the requirements of the Court to determine what the legislative intent was, and Prouty does a very good job of addressing that, and to say that it's simply speculation, well, it's not speculation. You have a reasoning based upon what happened, and you look at the legislative history. This was passed within a few-day period, 516, 517... Would that mean that you want to ignore the statute on statutes? No, you're not ignoring the statute on statutes. You're saying that if it cannot be reconciled, then you have to do with the last one that was passed. Here, as Prouty says, and Gonzales says, and Newton says, and Maldonado says, you can reconcile this because even though a section was changed and a later section had the old language in, you can determine from the passage of that specific point in the public act, 114 in this case, that the legislature intended to make that change. And the suggestion that, well, the last act that was passed, that they listed, 1538 or something like that, listed all of these public acts and struck them all out and passed a one public act to truly clear up any confusion, but by then Prouty had already been decided, so there's no indication that that actually supports the contention that the legislature intended that it be a class 2 felony. I don't understand how you can say that a public act that says that this offense is a class 2 and a public act that says this offense, same offense, is a class 3, are not irreconcilable. Because you have to look at how the legislature passed the statute. They were simply using the template of the prior public act, and then they were making changes to specific sections of the statute in each public act. Was 116 the only one that made it a 2? Correct. So everything else made it a 3? I would disagree that it made it a 3. I would say it repeated the language that had already been in place. Which made it a 3? Which was a 3, and Prouty has explained. That's not irreconcilable if you consider how the legislature went about passing the statutes. I mean, it sounds like a 3, though, to me. Right. But it does. It clearly stricken out and clearly put in as class 2. You mean in 2008? No, in 114. Clearly struck out the class 3 and made it a class 2. What's 114? I'm sorry, 116. You're changing numbers. Pardon me. I apologize. But the subsequent acts simply left the old language and didn't have any strikeouts, didn't have any italicized either, which would suggest that the language was being put back in. And that's how the legislature passes when they pass their statute. They have strikeouts and they have italicized. Strikeouts eliminates language, italicized adds language. They didn't add the language back in. Technically, they did. In 609, they didn't have class 2 anymore. They had class 3. Isn't that right? I addressed the 609, but I believe even then, it didn't put back the language as italicized. It didn't say class 2 anymore, so they put back class 3. With all due respect, Your Honor, under Prouty, it establishes and the other cases that follow Prouty, establishes that class 2 was the law that was in effect at the time. But the statute, forget about Prouty, 94-609 did not have class 2. It had class 3, right, as adopted by Public Act 94-609. Right. Right. And 94-116 had class 2. Correct. And it had specifically stricken out class 3. And that's what Prouty talks about, but the question was about the two different statutes. Well, it's the same application of the language and the reasoning. I'm going to suggest that. I know you're relying on Prouty, but I'm saying when it addressed the class of crime, the one act says 2 and the other one says 3. Well, actually, she suggested that 69 says 4. Okay. Which I, again, side the point. But she wasn't arguing that it said 4. She was arguing that if they couldn't prove the revocation or suspension of the license, then it couldn't be a class 3. The revocation and suspension of the license, I believe I addressed in the statute. I'm drawing a blank exactly on that. I'm sorry. I'm just trying to say that she's not arguing that the statute says class 4. Well, I believe I misunderstood what she was arguing. My understanding of what she was arguing, and she can correct it when she gets back up, is that finding that it's class 3 is contingent on a showing that at the time he did this third offense, he was operating on a revoked or suspended license. So she's saying that if the state can't make that showing, then whatever is the lower thing than class 3 would be what he would be guilty of. So I don't think she's saying anything about the statute saying class 4. I apologize if I'm misunderstanding what her argument was on that. Maybe I misunderstood it. I suppose she can clear that up. Yes. But I believe that I've addressed the 609 issue in there, and I am drawing a blank on what that was. So I apologize again. The legislature drew a blank, too. Well, all of these were passed within a relatively short amount of time, and it was only the one that specifically made it a class 2. So I think probably regardless of when, if it was passed six months later, it still has the same effective date and still is the only one that has the class 2 change. That one should control. So I don't believe any of the other issues were raised in your argument. Even if it was a typo. Sorry, what? Even if it was a typo. I would respectfully suggest it was not a typo if the legislature put a strike out and put the number on it. So they'd have to make a conscious effort in that. And that's really the main change, perhaps, in 116. If there are other questions, we'll request this court affirm. Thank you. Thank you, Mr. Arana. Ms. Barron, any rebuttal? Thank you. Thank you again. I do acknowledge that the class 4 issue that I had raised was not in our briefs, and if the court would like supplemental briefs on this, I would be happy to write one. But your honors did understand the issue as I was presenting it, which is that not that any of the mandatory acts changed C-12 to make it a class 4 felony. That's not what I was saying. What I was saying was that if 609 controls, the language of the subsection that Mr. Bright was charged under, just the factual basis no longer matches up with what the intent clearly was to charge him with, and that the analogous section that they would have charged him with under 609 would have been a third violation of the DUI statute, which would have been a class 4 felony. Nowhere in the indictment does it say anything other than just the third violation of the DUI statute, and under 609, that subsection is a class 4 felony. Now, counsel argued that ignorance of the law is no excuse, and I just wanted to say that the issue, though, is not just whether the defendant was on notice of what he was being charged with, but the real problem here with these six different mandatory acts that were all passed at the same time with conflicting provisions intent on taking effect the very same day, the problem is also having all the courts on notice and all courts on the same page as to what they were moving forward with, what they were charging for different violations of the DUI statute. And when you look at the way that Crowdy and its progeny and Gonzalez in those cases relied upon Crowdy, which I still maintain was wrongly decided, when you look at those cases, you get the result that courts really could have just picked which one of those mandatory acts they wanted to follow and then move forward accordingly. No appellate court has rejected Crowdy, though. Isn't that correct? That is correct. It has not been. They've cited and followed Crowdy. They have cited Crowdy. There's at least, like, what, three cases? There is four, actually. It's Newton, Harper, Gonzalez, and Maldonado. Yeah. But one of the things I think is really interesting about all of these cases is that in finding that these acts did not irreconcilably conflict and that they could be given effect without inconsistency, they really all focus on one public act versus one public act. And while I don't believe that those acts, even one-on-one, can be given effect together, what really should be looked at isn't just can this one that we happen to be arguing about at this point be given effect with 609, but can all six be given effect at the same time? And these courts don't really look at whether all six at the exact same time can be given effect. And it's clear that they cannot because, like I discussed before, Public Act 329 affirmatively added language onto a portion of 116 that 116 had stricken and deleted out. So clearly, at the very least, these two acts cannot be reconciled, and so you need to look at all six. And since all six cannot be reconciled without a lot of ambiguity and confliction, you need to look at the last act passed and the rule of lenity and rule that 609 was the controlling version of the statute at the time of Mr. Bright's alleged offense. Thank you very much. Any further questions? Thank you. Thank you. We thank both of you for your arguments this afternoon. The committee will take the matter under advisement and will issue a written decision as quickly as possible. The court will now stand in brief recess for final change.